## PAZIK v DEVINE

Ohio Appeals, 7th Dist, Mahoning Co

No 2358. Decided April 30, 1937

Peter B. Betras, Youngstown, A. P. Hottenstein, Youngstown, and I. F. Freeman, Youngstown, for appellant.

William E. Pfau, Youngstown, for appellee.

### OPINION

By ROBERTS, J.

This cause is in this Court of Appeals upon an appeal of law from the Court of Common Pleas. The parties occupy the same relative positions in the trial as in the lower court and will hereinafter be referred to as plaintiff and defendant as appearing in the trial in that court.

The plaintiff alleged, in substance, in her petition that James A. Devine was the duly appointed and qualified receiver for the Central Savings & Loan Company, and was authorized in said proceedings to take charge of all of the assets and property of said Central Savings & Loan Company; that included in said assets is a certain structure known and referred to as the Central Tower, being an office building with entrances leading therein both from West Federal Street and from the west side of the Public Square, where said building is situated; that during all of the times herein mentioned, the defendant, James A. Devine, as receiver for the Central Savings & Loan Company, had complete control, operation, maintenance and supervision of the above described building, namely the Central Tower: Thus far the allegations of the petition are admitted by the answer of the defendant, and the further allegations of the petition are denied by the answer. It is further alleged that on or about November 15, 1933, while this plaintiff was entering said Central Tower from the easterly entrance on the Public Square, and while walking from the revolving door into the interior corridor of said Central Tower, this plaintiff was caused to fall, through no fault of hers, over slush and water immediately adjacent to the revolving door, thereby causing her to come in violent contact with the hard surface of the floor, thereby inflicting injuries upon her. It is not necessary for present purposes to go into details concerning these injuries, which are alleged to have been serious in nature. The plaintiff further says that said injuries were caused and brought about without any negligence on her part whatsoever, but due solely and wholly to the negligence of the defendant directly and proximately operating in the following respects, to-wit:

"1. In that the defendant, acting by and through its servants and agents, the employes in control of said office building, negligently, carelessly caused and permitted as unsafe condition to exist near the revolving door, from the easterly entrance of said building where people would ordinarily enter said building and causing and allowing to remain on said floor, ice and slush, resulting from the revolving doors, without giving notice or warning to people entering said building and by reason thereof, the defendant caused and permitted a dangerous, insecure and unsafe condition to be and remain in said entrance

way where people ordinarily entered said building, thereby causing a nuisance to exist.

"2. In that the defendant, acting by and through its agents and servants, the employes in the control of the operation and maintenance of said office building, caused and permitted a dangerous and unsafe and insecure condition to be and remain in the entrance way to said building, and by reason thereof the plaintiff fell upon said ice and slush and was injured as described herein."

The petition further alleges that at the time of receiving said injuries the plaintiff was in good health, able-bodied and earning $15.00 per week, and that by reason of said injuries, solely caused to the plaintiff by the negligence and reckless conduct of the defendant, as described herein, she has been caused great pain and suffering and will continue to suffer pain by reason of said injuries, and that she is permanently weakened and injured, to her damage in the sum of $5,000.00, for which sum she prays judgment.

The issue thus raised subsequently came on for trial to a jury in the Court of Common Pleas. Plaintiff introduced evidence in support of her contention and rested. Thereupon the following appears, as shown by the record, page 69:

"Mr. Pfau: Now comes the defendant, at the close of plaintiff's evidence and respectfully requests the court to arrest the evidence from the jury and direct a verdict for the defendant.

"Court: Motion sustained on authority of **116 Oh St, the Fader** case, commencing at **page 718**, and also on authority of the principles followed by our Court of Appeals in **Suran v Lustig Shoe Store, 14 Abs,** commencing at **page 590**, and see full opinions filed in the Law Library.

"Mr. Betras: Exception."

On the direction of the court, therefore, the jury returned a verdict in favor of the defendant, upon which judgment was rendered, and the plaintiff prosecutes her action in this court for a reversal of the judgment of the Court of Common Pleas.

The evidence in the case discloses that the Central Tower is a modern, seventeen story structure, occupied as an office building, located on the west side of the Public Square in the city of Youngstown, and at the time of the matters concerning which complaint is made was under the manage-

ment and control of James A. Devine, receiver, and defendant in this action. There is a lobby or entrance on the ground floor of the easterly side of said building, from the Public Square, consisting of two revolving doors which give entrance into a room from which there is also an exit northerly to West Federal Street, the doorway opening into a drug store and three elevators. Heat is provided for in this building by three large radiators. The outside revolving doors are so constructed that they are continually closed; that is, as a person enters the building passes through the revolving door before the wing in front of such person opens the wing in the rear of such person closes. There is fastened to the wings of these revolving doors strips of flexible rubber which contact with the floor and on the wings perpendicularly, contacting with the jams of the door in some fabric which contacts with the jams, so that a draft of air through the doors is impossible, subject however, to some air presumably being carried in from the outside as these doors revolve.

The evidence is further to the effect that on the 15th day of November, 1933, in the afternoon, the plaintiff, a young lady, having occasion to visit an office in the Central Tower building, on some matter of business, entered the lobby through one of the revolving doors, intending to take an elevator to go to a higher floor, and that while crossing the lobby she slipped and fell over what the testimony shows to be slush and ice that had formed in that lobby and she was severely injured. The evidence further indicates that on the day in question the weather was cold, and during the day there had been but little heat in the lobby from the radiators or otherwise, and the room was cold; that ice inside the revolving doors had been forming for some time and had accumulated to a considerable thickness, about one inch, as shown by the testimony. This condition was testified to by a considerable number of witnesses, and so far as the proceedings in the Court of Common Pleas were concerned, was uncontradicted, a verdict having been directed by the court at the close of plaintiff's testimony. This verdict was directed, as stated, by the trial court at the time of such direction, on the authority of the case of **Kresge v Fader, 116 Oh St 718, and Suran v Lustig Shoe Store, 14 Abs 590,** and counsel for the receiver defends the action of the court in so directing a verdict on the authority of these cases.

It becomes pertinent, therefore, to give

some brief consideration to these cases, which the trial court thought were dispositive of the case in favor of the receiver. Referring first to the case of S. S. Kresge Co. v Fader, the syllabi reads as follows:

"1. Owners or lessees of stores owe a duty to the patrons of the store to exercise ordinary care to prevent accident and injury to the patrons while in the store, but they are not insurers against all accidents and injuries to such patrons while in the store.

"2. The fact that during a rain-storm some water has blown into the front of a store on account of the opening of the door to admit customers, and the incoming shoppers during such rain storm carry in moisture on their clothing and feet and umbrellas, and thereby and only thereby cause the floor inside the door and near thereto to become damp and more slippery than is the dry floor in other parts of the store, will not give rise to a cause of action against the owner or lessee of the store in favor of a later incoming patron who slips or falls on such damp floor and is injured by such fall."

Here it is recognized that stores may properly be kept open during wet and inclement weather and the continued walking of people having ingress to the store through the front entrance necessarily and naturally brings in some moisture which causes the floor to become damp, which condition "would not give rise to a cause of action against the owner or lessee of the store in favor of a later incoming patron who slips or falls on such damp floor and was injured by such fall."

Referring now to the case of Suran v Lustig Shoe Store, 14 Abs, page 590, perhaps it was thought that this case would be particularly persuasive because it was decided by this court and the opinion delivered by the writer hereof. The syllabus, which was not written by the court, is quite similar to the syllabus in the case of Kresge v Fader, as were the conditions as indicated by the evidence.

It will be observed that both of these cases relied upon by counsel for the defendant and the trial court in directing a verdict in this case, were cases where there was some moisture upon the floor and inside the entrance door of stores in which the courts recognize the proposition that stores may be properly kept open for the accommodation of customers notwith-

standing it is raining or wet on the outside, and that some moisture may accumulate upon the floor from the shoes of such customers, and no liability is incurred by the owner or proprietor for such condition. This is well settled not only by the cases cited but by many other and uniform decisions upon this proposition. The undisputed facts in the instant case show an entirely different condition. The building was in charge of a receiver. Primarily there was an assistant receiver or manager of the building, Mr. Fred W. Green, who designates himself in his testimony as building manager, and whose duties are, as he says, "looking after the entire building, rentals and maintenance and anything necessary to keep the building going." This witness further states that he had general oversight over the entire building. At the time of the accident complained of (R. 12) there were three maintenance men employed to work about this building and keep it in proper condition, namely W. S. Probst, a full time man, Chris Yeager and Arthur Fitts. In response to a question Mr. Green answered:

"A. Probst devotes his entire time to look after the heating and lighting and elevators. Mr. Yeager takes care of at intervals after the cleaning of the lobby during the day and Fitts cleans the sidewalk and does other work along that line."

In addition there were women who attended to the condition of the floors. It is thus apparent that in regular attendance, looking after this building, was Mr. Green and these three men whose duty it was to look after the condition in the vestibule where the accident happened, and who, so far as the evidence shows, were available at any time during the day in question when the accident happened. No excuse is given for the failure of the heating of the room. This accident was caused not merely because moisture was tracked in upon the floor and it became damp, but because the moisture and slush which was tracked in by reason of the unnecessarily cold condition of the room froze and formed ice upon the floor, which we should assume in this case was easily removed or prevented from accumulating by a little care exhibited on the part of any one of these several persons whose duty it was to maintain proper conditions. The evidence further indicates the presence of tools by which this dangerous accumulation of ice could have been scraped off. The

use of salt or some other material would have melted the ice and rendered the floor safe for use. The maintenance of a reasonable amount of heat in the building would have prevented the freezing of the moisture and the creation of the condition which resulted in the accident to this plaintiff. So far as is shown by the evidence in this case this undisputed condition was wholly unnecessary and inexcusable. The conditions in the instant case, the condition which caused the accident and the attending conditions of negligence are entirely dissimilar from the cases cited by the lower court and by counsel for the defendant in this case. We are cited to no case, and know of none, where an accumulation of ice under like conditions has been held to be excusable or no liability therefore to exist. In the cases cited, and other cases, the courts have recognized inability to instantly remove dampness tramped to inside the entrance to a public building under inclement conditions of weather, but, as stated, the condition which caused the accident to the plaintiff could have been easily removed or easily prevented from either accumulating and existing with danger to an invited public.

The conclusion of this court is upon the issue thus presented that the trial court committed reversible error in directing a verdict for the defendant. The judgment of the Court of Common Pleas is therefore reversed and the cause remanded.

Judgment reversed.

NICHOLS and CARTER, JJ, concur.